UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Amanda B., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:23-cv-03201-SEM-KLM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## REPORT AND RECOMMENDATION

**KAREN L. McNAUGHT, United States Magistrate Judge:**

This is a civil action under 42 U.S.C. §§405(g) and 1383(c)(3) for judicial review of defendant's denial of plaintiff's application for social security disability benefits under Title XVI of the Social Security Act.[1] The Court has considered plaintiff's complaint, substantive brief, and reply brief, seeking remand of the decision by the Administrative Law Judge ("ALJ") and defendant's substantive brief seeking affirmance of the ALJ's decision. (Doc. 1, 7, 11, 12). For the reasons stated herein, this Court recommends the ALJ's decision be **AFFIRMED**.

### I.  BACKGROUND

Plaintiff, Amanda B., is a 52-year-old woman who presented with depression, anxiety, diabetes, degenerative changes to her spine, right hip

---

[1] *See* 42 U.S.C. §405(g) (requiring the court to enter judgment upon the pleadings and transcript of the administrative record) and §1383(c)(3) (requiring the same).

osteoarthritis, obesity, and a history of stroke. (R. 47).[2] Plaintiff has a GED and has worked, *inter alia*, as a part-time worker at a fast-food restaurant. (R. 50). Plaintiff applied for supplemental security income under Title XVI on March 31, 2021. (R. 69). The application was denied initially on September 30, 2021, and on reconsideration on January 7, 2022. (R. 104, 119). Plaintiff requested a hearing on February 15, 2022, which was held on August 23, 2022, before the Honorable Robert Leutkenhaus (the ALJ). (R. 34, 123). At the hearing, plaintiff was represented by an attorney, and both plaintiff and a vocational expert testified. (R. 34). The ALJ issued a decision affirming the denial of benefits on September 19, 2022. (R. 12). The Appeals Council denied plaintiff's request for review on May 4, 2023, and the ALJ's decision became final. (R. 1). Plaintiff timely filed this civil action seeking review of the ALJ's decision on June 8, 2023. (Doc. 1).

## II. DISCUSSION

### A. Legal Standard

#### 1. Standard of Review

When reviewing the administrative record, the court does not "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). The court reviews a decision denying benefits to determine only whether the ALJ properly applied the correct legal standards and whether substantial evidence supports the ALJ's conclusions. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial" here means "more than

---

[2]References to the pages within the Administrative Record will be identified by (R. page number). The Administrative Record appears at Docket Entry 6 (Doc. 6).

a mere scintilla," for which the threshold of evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In the Seventh Circuit, the Commissioner's reasoning must "build an accurate and logical bridge between the evidence and the [conclusion]." *Powell v. Kijakazi*, 664 F. Supp. 3d 846, 850 (C.D. Ill. 2023).

### 2. Disability: Five-Step Analysis

In determining a claimant's disability, the ALJ conducts a five-step sequential test. *See* 20 C.F.R. § 404.1520(a)(4). The burden to prove disability is on the claimant in the first four steps, but shifts to the ALJ to disprove disability at the fifth step. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023).

First, the claimant must prove he is not currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4). Second, he must prove his medically determinable impairment lasting at least 12 months is "severe." *Id.* If the claimant alleges to have a mental impairment, as opposed to physical, the evaluation proceeds differently at step two.

To evaluate the severity of claimant's mental impairment, the ALJ will turn to the "Paragraph B criteria." *See* 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00. This is a list of four areas of mental functioning for the ALJ to evaluate. The ALJ must determine whether the claimant can: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. *Id.* If the ALJ finds the claimant's mental impairment results in an "extreme" limitation in one area, or a "marked" limitation of two of the four areas of mental functioning, then the claimant's mental

impairment is considered severe.[3] *Id.*

Third, claimant must prove his impairment is medically equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 ("Listings"), in which case the claimant is automatically presumed disabled. *Id.* Because meeting the presumption requirement in step three merely expedites the decision-making process for a claimant who is considered "legally" disabled, the sequential evaluation does not stop there for those claimants whose impairment is excluded from the Listings. Thus, if the claimant's severe medical impairment does not meet any of the requirements in the Listings, then the ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.*

The RFC is a list of activities representing the most a claimant can work despite his limitations. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The RFC evaluation happens between steps three and four and applies to steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv-v).

Fourth, the claimant must prove he is incapable of performing his past relevant work. *Id.* Fifth, the ALJ must prove the claimant can perform other work existing in substantial numbers in the national economy. *Id.*

---

[3]The effects of a claimant's mental impairment on each of the four areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation (though the use of such a scale is not required). 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00.

**B. Analysis**

At issue here is the RFC step. Plaintiff raises two arguments: First, the ALJ inadequately discounted the medical opinions of Ms. Barry and Dr. Froman. Second, the ALJ erroneously discredited plaintiff's statements about her symptoms.

This Court disagrees. To resolve these arguments, the Court considers whether the ALJ followed the correct legal standard and whether her decision is supported by substantial evidence—evidence "a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

**I**

First, plaintiff argues the ALJ erred in finding the medical opinions of Julie Barry and Frank Froman unpersuasive. She argues the ALJ did not focus on the factors enumerated in 20 C.F.R. §404.1520c(c)—supportability and consistency—as she is required to do when analyzing the persuasiveness of medical opinions. (Doc. 9 at 8); (R. 30). This Court disagrees.

Julie Barry, a nurse practitioner, provided her professional opinion of what plaintiff can do despite her impairments on July 26, 2022. (R. 521-524). The ALJ concluded Ms. Barry's medical source statement was unpersuasive because it lacked supportability and was inconsistent with the other evidence in plaintiff's record. (R. 25). Plaintiff claims the ALJ failed to properly apply the criteria of 20 C.F.R. §404.1520c(c) in reaching her conclusion. However, the ALJ explicitly based her decision on the criteria enumerated in that section.

The ALJ is not to defer to any medical opinion. 20 C.F.R. §404.1520c(c).

Instead, she considers medical opinions using the applicable factors listed in paragraphs (c)(1) through (c)(5) of 20 C.F.R. §404.1520c(c). *Id.* The two most important factors the ALJ must consider when evaluating the persuasiveness of medical opinions is supportability and consistency. 20 C.F.R. §404.1520c(c)(1). Supportability means "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [his] medical opinion . . . the more persuasive the medical opinion will be." *Id.* Thus, the ALJ is to give more weight to medical opinions with support by internal explanation than to those without. *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023). Consistency means "the more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion." 20 C.F.R. §404.1520c(c)(2).

Ms. Barry found, *inter alia*, that plaintiff would be absent from work about three days per month and would be off task twenty-five percent of the time, or more, but would not need unscheduled breaks. (R. 521, 523, 524). Ms. Barry supported her findings by noting plaintiff's "CVA/stroke in March 2022," stating plaintiff had "limited endurance [and] right sided weakness," as well as "lumbar stenosis and scoliosis with pain prior to [her stroke]." (R. 521). At the hearing, the vocational expert testified there are no jobs in the national economy for an individual who misses that much work, which, according to plaintiff, means the ALJ would have had to find plaintiff disabled had she not erroneously dismissed Ms. Barry's opinion. (Doc. 7 at 5-6). However, the ALJ did not err.

The ALJ found that, "although Ms. Barry indicated [plaintiff's] limitations

were supported by [Ms. Barry's] diagnoses, [plaintiff's] ongoing complaints of weakness are not supported by Ms. Barry's own treatment notes where she documented [plaintiff] had a normal gait and muscle strength and tone with no mention of right-side weakness." (R. 25). The ALJ also found Ms. Barry's opinion was "not consistent with [the] other medical records, which showed few abnormalities related to [plaintiff's] history of stroke, and spinal issues." *Id.*

Plaintiff finds issue with the ALJ's assessment of the supportability factor in Ms. Barry's medical opinion but does not state why her assessment is an issue. (Doc. 7 at 5-6). The ALJ found Ms. Barry's opinion of plaintiff's weakness was internally contradicted by Ms. Barry's own treatment notes, and therefore it lacked relevant supporting explanations presented by a medical source. (R. 25). The ALJ cited to the treatment notes, which substantiate her conclusion, and properly analyzed the supportability factor. *See* R. 525-599.

In analyzing the consistency of Ms. Barry's opinion, the ALJ explained there were medical records inconsistent with the opinion but did not cite to those medical records. This Court will not speculate upon which medical records the ALJ relied in her decision that plaintiff was supposed to disprove. However, we concur with defendant that there is substantial evidence supporting the ALJ's finding of inconsistency. *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021)(finding a reviewing court must uphold an agency's decision of "less than ideal clarity" if the logical path "may reasonably be discerned"); *See also* R. 466-480, 499-512, 526-542, 547-579. The ALJ reasons evidence in the record showing "few abnormalities" with plaintiff's stroke contradict the foundation upon which Ms. Barry

based her opinion—plaintiff's "CVA/stroke in March 2022." (R. 25, 521). The physical examinations from the records defendant argues the ALJ considered in her inconsistency determination all show "normal," "appropriate," or "regular" range of motion, muscle strength, and motor abilities. *See* R. 22-26, 361-363, 374-376, 526-527, 535-536, 539-540, 553-554. A reasonable mind might accept this evidence as adequate to support a finding that it shows few abnormalities related to plaintiff's stroke. *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020).

This is especially true because plaintiff primarily argues Ms. Barry's opinion is consistent with certain evidence that she claims would support a finding of disability, but she does not explain why the ALJ's reliance on evidence inconsistent with Ms. Barry's opinion was impermissible. Plaintiff accuses the ALJ of cherry-picking evidence but fails to specify how this was done. (Doc. 7 at 7). This is not a case of cherry-picking evidence. This is a case that follows the proper analysis under the regulatory factor of consistency, which directs the ALJ to explain why certain evidence in the record is so inconsistent with a medical opinion that it renders the opinion unpersuasive. *See* 20 C.F.R. §404.1520c(c)(2). If substantial evidence supports the ALJ's conclusion, we must affirm the decision, even if reasonable minds might reach different conclusions. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Frank Froman, a psychologist, provided a mental status evaluation on September 24, 2021. (R. 365). Plaintiff again asserts the improper application of 20 C.F.R. §404.1520c(c), but this Court finds no error in its application. (Doc. 7 at 7). Dr. Froman prepared a psychological report in which he found plaintiff

"will have significant difficulty managing the stress associated with customary employment." (R. 368). He diagnosed her with a history of adult ADHD, borderline personality disorder, antisocial and inadequate personality traits, low intellectual functioning, developmental disabilities in reading and math, and memory issues related to her cerebrovascular accident (her stroke). *Id.* Dr. Froman also found plaintiff was able to perform "one or two step assemblies at a competitive rate," but that "her ability to stand is likely compromised by her back issues [and] her tendency to episodically fall." *Id.* The ALJ found this unpersuasive. (R. 26).

First, she reasoned, Dr. Froman's conclusions about plaintiff's physical abilities were based on plaintiff's complaints rather than his own medical examination, given that his psychological evaluation did not assess plaintiff's physical abilities. (R. 26). Indeed, she found Dr. Froman's opinion about plaintiff's ability to stand inconsistent with plaintiff's "normal gait" and "full muscle strength." *Id.* Second, plaintiff's mental status examinations in the record consistently showed intact mental functioning, which conflicts with Dr. Froman's finding of plaintiff's difficulty with "two-step assemblies." *Id.* The ALJ's reasoning followed the proper analysis of supportability and consistency as required by 20 C.F.R. §404.1520c(c). The ALJ explained why Dr. Froman's opinion lacked the supportability of his own explanations. *See Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022)(finding an ALJ may discount a physician's opinion that is based primarily upon a claimant's subjective complaints). She also explained why Dr. Froman's opinion was inconsistent with the other evidence in the record—namely, the

parts of the record to which the ALJ cited in support of her conclusion. *See* R. 322, 327, 331, 338, 342, 347, 364, 373, 377, 385, 466, 468, 474, 501, 528, 533, 537, 541, 545, 549. This evidence shows plaintiff's full muscle strength, only one report documenting a single fall (not a "tendency to episodically fall"), normal mental functioning, and depression controlled effectively by medication. *Id.* The bridge she built is accurate, logical, and supported by substantial evidence.

Plaintiff repeatedly asserts the ALJ should not have ignored the part of Dr. Froman's opinion that states "[plaintiff's] life appears to be punctuated [by] numerous failures, including the loss of her children, the loss of multiple marriages, moving place to place, a number of jobs which never seem to last for her, and an inability to stay the course. Her CVA has left her even more troubled, and her memory, her ability to retrieve, have now appeared to be compromised because of her stroke. Her judgment has always been weak, and her ability to accept responsibility for her behavior has also been weak. She tends to see herself as a victim of life and tends to export blame for behavior to others. She has a strong temper, suffers some significant mood disruptions, and has always found it difficult to stay the course in any endeavor she has tried." (Doc. 12 at 2); (R. 367). Plaintiff then cites to two function reports she argues substantiate this portion of Dr. Froman's opinion.

When forming a list of activities the claimant can do (the RFC), the ALJ must consider the limitations imposed by all of claimant's impairments and their consequent symptoms, even those that are not severe. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). However, an ALJ need only include limitations that are

supported by the medical record. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Plaintiff argues the limitations found by Dr. Froman are supported by the medical record, but her argument stops there. She does not explain how any of the life failures or behavioral tendencies described by Dr. Froman constitute medical impairments, nor how a reasonable mind would interpret them as symptoms of the mental impairments she was found to have. The ALJ accounted for plaintiff's troubled memory, mood disruptions, difficulty interacting with others, and difficulty staying the course by finding moderate limitations in these areas of mental functioning at step two. (R. 19). She accounted for these limitations—which plaintiff does not address—in the RFC, which restricts plaintiff to performing only simple, routine, repetitive tasks that require simple work-related decisions, involve few changes in routine, and limit contact with supervisors, coworkers, and the general public to an occasional basis." (R. 20). That is all the ALJ was required to do. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023)(finding an ALJ must not rely solely on the parts of the record that support her opinion in reaching her conclusion, but she need not evaluate "each and every" piece of evidence).

## II

Second, plaintiff challenges the ALJ's analysis of her subjective statements. (Doc. 7 at 9). Specifically, plaintiff argues the ALJ erred by disregarding her statements about the intensity, persistence, and limiting effects of her pain and other symptoms solely because they were not supported by objective medical evidence. (Doc. 9 at 12); SSR 96-7p(4). However, plaintiff fails to identify which

specific statements were disregarded by the ALJ or explain how the ALJ's decision was based exclusively on the lack of objective medical evidence. Defendant argues the ALJ did nor err in disregarding plaintiff's statements of pain and other symptoms, providing precisely which symptoms the ALJ properly dismissed. (Doc. 11 at 18-21). This Court agrees with defendant.

When a claimant alleges pain or other symptoms, the ALJ evaluates those symptoms using a two-step process. SSR 16-3p. First, there must be a medically determinable impairment reasonably expected to cause the subjective symptom. 20 C.F.R. §404.1529c(b). Second, the intensity, persistence, and limiting effects of the subjective symptom must affect the claimant's ability to work. 20 C.F.R. §404.1529c(c). In evaluating the effect of a claimant's symptom, claimant's statements about the intensity, persistence, and limiting effect of his subjective symptom are also considered and evaluated against the evidence. SSR 16-3p. Instead of focusing on the claimant's truthfulness when evaluating his statements, the ALJ will consider any inconsistencies between the evidence and the claimant's statements about the effect of his symptoms. 20 C.F.R. §404.1529c(c)(4); SSR 16-3p. In assessing the consistency of the claimant's allegations with the evidence, the ALJ may consider, unexclusively, the claimant's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. See SSR 16-3p. Thus, subjective statements may be discounted if there are inconsistencies in the evidence as a whole. As long as the ALJ gives specific reasons

supported by the record for her finding, this Court will affirm her determination. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

As defendant points out, plaintiff reported that her right-side weakness affected her ability to use her hands, her back pain prevented her from sitting longer than 10 to 20 minutes before needing to change positions, and her high blood sugar required her to take 30-minute breaks. (Doc. 1 at 19); (R. 52, 59, 62-63). The ALJ found, *inter alia*, plaintiff's complaints about her limitations due to muscle weakness, back pain, and high blood sugar are inconsistent with plaintiff's normal muscle strength, unlimited range of motion, no gross motor deficits, mild right-side weakness but normal movement of all extremities, and the regulation of her diabetes with medication. (Doc. 11 at 200); (R. 22-23). Where plaintiff complained of back pain, the ALJ noted plaintiff herself later stated her "back [was] not bothering her." (R. 22, 526). The ALJ additionally noted plaintiff reported her depression medication was "working well," her diabetes was managed by insulin, and her decreased vision was treated with prescription glasses. (R. 22-23, 28, 57-58, 329, 354). The ALJ also explained she limited plaintiff's RFC to light work and a reduced ability to use her lower back and hands. (R. 22-23). The ALJ adequately explained how plaintiff's statements regarding her symptoms were inconsistent with the evidence in the record, referenced the appropriate evidence, and applied the correct regulatory factors to support this conclusion. (R. 22-24). The ALJ's bridge between the evidence and her conclusion is accurate and logical.

### III.  CONCLUSION

For these reasons, it is hereby recommended: (1) the ALJ's decision denying benefits to plaintiff, Amanda B. be AFFIRMED; and (2) judgment be entered in favor of the Commissioner.

The parties are advised any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. §636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Entered: November 6, 2024.

/s/ Karen L. McNaught
KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE